UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OLEGARIO TRUJILLO,<br><br>Defendant. | Case No.: 1:15-cr-00288 JLT SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. 618) |

Olegario Trujillo is a federal prisoner who moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) based on his medical circumstances. (*See* Docs. 618, 625.) The government opposes the motion, arguing that Defendant fails to demonstrate extraordinary and compelling reasons justifying a reduction. (Doc. 632.) Defendant filed a reply, emphasizing the inadequacy of the medical care he is receiving in custody. (*See* Doc. 633.) For the reasons set forth below, Defendant's motion is **DENIED**.

**I.    Background**

In 2017, Defendant pled guilty to one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1). (Docs. 206, 224.) In advance of sentencing, the probation office prepared a Presentence Investigation Report. (Doc. 247.) The PSR assigned a total offense level of 41, which included a 2-level firearm enhancement pursuant to U.S. Sentencing Guidelines § 2D1.1(b)(1); a 4-level upward adjustment based on Defendant's supervisory role in the offense; and

1

a 3-level decrease for acceptance of responsibility. (PSR ¶¶ 32-41.) Defendant was assessed 5 criminal history points based on prior convictions and 2 status points under the prior U.S.S.G. § 4A1.1(d), for a total criminal history score of 7. (*See* PSR ¶¶ 47-52.) This placed him in criminal history category IV and, when combined with an offense level of 39, resulted in an advisory guideline sentencing range of 360 months to life. (PSR ¶¶ 53, 82.) The probation office recommended a sentence of 360 months. (*Id.* at 20.)

At the sentencing hearing, the Court adopted the findings in the PSR but found that no § 2D1.1(b)(1) firearm enhancement applied, which reduced Defendant's total offense level to 39. Nonetheless, according to the Sentencing Table at Chapter 5, Part A of the Sentencing Guidelines (2016), the applicable guideline range remained the same. (*See* Statement of Reasons at 1.) The Court also varied downward for the reasons stated in Section VI of the Statement of Reasons. (SOR at 3.) Defendant was sentenced to a term of 240 months in custody followed by 60 months of supervised release. (Doc. 285 at 2-3.)

In November 2020, Defendant moved for compassionate release based on his medical conditions and risks associated with the COVID-19 virus. (*See* Doc. 534.) His motion was denied. (Doc. 561.) Defendant is currently incarcerated at the Federal Correctional Institution in Mendota, California. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Dec. 3, 2025). His projected release date is October 21, 2031. *Id.*

**II.     Legal Standard**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018, a defendant, or the Director of the Bureau of Prisons on the defendant's behalf, may move for a sentence reduction in the district court. 18 U.S.C. § 3582(c)(1)(A). Upon such motion,

> district courts may reduce [a defendant's] term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies;

2

> (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)."

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (citing *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021)). The defendant bears the burden of "establish[ing] his eligibility for compassionate release." *Wright*, 46 F.4th at 951.

In 2023, the U.S. Sentencing Commission issued an amended policy statement outlining the circumstances under which "extraordinary and compelling reasons" exist to reduce a defendant's sentence. *See* U.S. Sent'g Guidelines Manual (U.S.S.G.) §§ 1B1.13(b)(1)-(6) (U.S. Sent'g Comm'n 2023). These include the defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, or "other reasons." *Id*. A defendant must show, and the Court must consider, "extraordinary and compelling reasons" according to the current version of U.S.S.G. § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[1]

### III. Discussion and Analysis

#### A. Administrative Exhaustion

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure

---

[1] Before the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Ninth Circuit has not yet issued an opinion as to whether the recently amended § 1B1.13 is binding, but several district courts within this Circuit have treated it as such. *See, e.g., United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024) (collecting cases and concluding that "the current version of § 1B1.13 is binding"); *United States v. Naki*, 2024 WL 4145638, at *3 (D. Haw. Sept. 11, 2024) ("Since the amendments, *Aruda* is no longer good law to the extent that it held that the policy statements of the United States Sentencing Commission are not binding on motions for compassionate release.").

3

of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[2]

Defendant contends that he submitted a letter to the Warden of FCI Mendota on November 19, 2023, and that more than 30 days had passed without a response. (Doc. 618 at 1, 5.) The government concedes, and the Court agrees, that Defendant has satisfied the statutory exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). (Doc. 632 at 5.)[3]

### B.      Extraordinary and Compelling Reasons

According to the Sentencing Commission's amended policy statement, a defendant's medical circumstances may provide an extraordinary and compelling reason for compassionate release if he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).[4] The Court assumes without deciding that Defendant's asthma qualifies as a medical condition requiring long-term or specialized care. Even so, Defendant must still show that such care is not being provided and that, without it, he is at risk of serious deterioration in health or death. He has not met either requirement.

#### 1.      Long-Term or Specialized Care "Not Being Provided"

BOP medical records show that Defendant was diagnosed with asthma in April 2023 after

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, to exhaust his administrative remedies, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies the defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, the defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] *See, e.g., United States v. Velasco*, 2024 WL 245638, at *2 (E.D. Cal. Jan. 23, 2024) ("Since Velasco's request has been denied, he has exhausted his administrative remedies and is permitted to file this motion."); *United States v. Portillo*, 2023 WL 5955999, at *1 (E.D. Cal. Sept. 13, 2023) (finding that because more than 30 days had elapsed since defendant filed his request to the warden for compassionate release, he satisfied the exhaustion requirement).

[4] Additional medical circumstances are provided, including terminal illness, serious medical conditions that substantially diminish a defendant's ability to provide self-care, and the risk of medical complications or death during an outbreak of infectious disease. *See generally* U.S.S.G. §§ 1B1.13(b)(1)(A), (B), (D). Defendant does not claim that he is entitled to relief under these subsections—or any other provisions under § 1B1.13—and the Court does not find any applicable under the circumstances.

presenting to Health Services to request an inhaler. (Sealed Doc. 629 at 1.) A BOP medical provider prescribed an albuterol inhaler with instructions for use as needed, scheduled a Chronic Care Clinic follow-up, and advised Defendant that he could return to Chronic Care Clinic or Sick Call as necessary. (*Id.* at 2.)

Defendant now contends that this treatment is inadequate because BOP has not prescribed what he describes as "cornerstone" long-term control medications, such as inhaled corticosteroids, leukotriene modifiers, combination inhalers, or theophylline. (Doc. 625 at 6-7.) He argues that albuterol "is not a safe or effective way to treat asthma in the long term," as it "does not address the underlying airway inflammation." (*See id.*) In advancing this argument, Defendant relies on clinical trial publications and general medical reference pages, none of which speaks to his individual medical condition, current symptoms, or the adequacy of the care he is receiving at FCI Mendota. (*See id.*)[5]

The limited medical record in this case—approximately seven pages—reflects evaluation, prescription of appropriate medications, and scheduled follow-up evaluations, and thus "paints an unremarkable picture … and at least suggests that [Defendant] is receiving medical treatment." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). There is no evidence that Defendant ever returned to BOP medical staff to report that his inhaler was ineffective, that his symptoms worsened, or that he needed additional treatment. Nor does he identify any asthma attacks or other respiratory episodes during his incarceration that would suggest his asthma is uncontrolled or that additional care was required to adequately treat his condition. Defendant does not allege that access to his inhaler was ever revoked, unavailable, or delayed, or that BOP medical staff determined

---

[5] Defendant characterizes his asthma as "severe," but neither his motion nor supplemental brief includes medical records or provider assessments diagnosing him with severe asthma or otherwise indicating that his condition is uncontrolled or worsening. *See United States v. Hopkins*, 594 F. Supp. 3d 852, 858-59 (E.D. Mich. 2022) *aff'd*, 2022 WL 18955859 (6th Cir. Oct. 6, 2022) (finding asthma not extraordinary where defendant provided no medical evidence that his asthma was "severe" as alleged, and records showed it was controlled with prescribed medication).

Defendant also claims that he suffers from hypothyroidism, high bilirubin levels, and a high mean platelet volume (MPV), but he advances no substantive argument concerning these conditions. (*See* Doc. 618 at 2; Doc. 625.) Moreover, the medical records before the Court indicate that Defendant has been treated with prescription medication for hypothyroidism since at least 2020. (*See* Doc. 618 at 9; Sealed Doc. 629 at 2.) The Court finds no record of abnormal bilirubin levels or MPV. Defendant also cited these conditions in his prior motion for compassionate release. In denying that motion in February 2021, the Court noted that the records reflected elevated MPV and bilirubin levels on September 11, 2020, and diagnosis and treatment for hypothyroidism on September 14, 2020, but no evidence of other conditions. (*See* Doc. 561 at 3.)

5

additional care was required but failed to provide it.

Courts routinely deny compassionate release under § 1B1.13(b)(1)(C) where—despite allegations of undertreatment—the record demonstrates ongoing evaluation, medication, and monitoring by BOP. *See, e.g., United States v. Cook*, 2024 WL 1268163, at *3 (S.D. Cal. Mar. 25, 2024) (finding that the defendant failed to show inadequate medical care where he offered no proof of being denied access to his inhaler or prescribed medications and there was no evidence his health had deteriorated); *United States v. Collins*, 2024 WL 1530933, at *4 (N.D. Ohio Apr. 9, 2024) (no denial of long-term or specialized care where BOP "properly" assessed, treated, and monitored defendant's non-terminal medical conditions, including providing asthma medication); *United States v. Torres-Guardado*, 2025 WL 371472, at *2 (D. Mont. Feb. 3, 2025) (finding that defendant's chest issues, mental health conditions, and "moderate to severe asthma"—for which he had not received "appropriate" medication—did not satisfy any medical category under § 1B1.13(b)(1)).

The decision in *United States v. Dowell*, 2025 WL 644291 (W.D. Va. Feb. 27, 2025) illustrates why Defendant's argument showing falls short. In *Dowell*, the defendant—who suffered from chronic obstructive pulmonary disease (COPD) and asthma—identified multiple respiratory episodes requiring medical evaluation, including a coughing spell in which he reported losing consciousness. *Id.*, at *4. He also expressed concerns about "excessive" delays in receiving a replacement inhaler and being prohibited from carrying an epinephrine autoinjector ("EpiPen") in the event of a medical emergency. *Id.*

Despite these allegations—which involved serious, documented respiratory events and asserted lapses in care—the court concluded that Dowell failed to show that he required long-term or specialized medical treatment that BOP was not providing. *Dowell*, 2025 WL 644291, at *5. The court emphasized that Dowell had been evaluated after each incident, treated with nebulizers, and ultimately provided an albuterol inhaler—which BOP clinical guidance identifies as the "therapy of choice" for bronchospasm,[6] whereas epinephrine is not. *Id.* This underscores that Dowell's desire for an EpiPen

---

[6] A bronchospasm occurs when the muscles lining the bronchi tighten, narrowing the airways and restricting airflow—often causing wheezing, coughing, and other respiratory symptoms. *See Bronchospasm*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/22620-bronchospasm (last reviewed Sept. 17, 2025).

reflected a preference for a particular treatment, not evidence of inadequate care.

Defendant's showing here is considerably weaker. He identifies no respiratory episodes requiring medical intervention, no delay or interruption in access to his inhaler, no clinician recommendation for additional therapy that went unprovided, and no evidence of worsening or uncontrolled asthma. Nothing in the record suggests that BOP has withheld medically necessary care or that Defendant faces any risk of deterioration due to undertreatment. As in *Dowell*, the existing course of evaluation, inhaler prescription, and routine follow-up defeats any claim that medically required care is "not being provided" within the meaning of § 1B1.13(b)(1)(C).

The single case Defendant relies upon, *United States v. Morales*, 2024 WL 967658 (E.D. Cal. Mar. 6, 2024), is distinguishable. There, the court granted compassionate release based on a combination of circumstances, which are not present here. A central factor was the defendant's unrebutted declaration that she had been sexually assaulted by correctional officers at FCI Dublin—a facility with a documented pattern of staff sexual misconduct. *Id.*, at *4. The court treated those circumstances as comparable in gravity to § 1B1.13(b)(4), reflecting the Sentencing Commission's 2023 amendment recognizing sexual or physical abuse by custodial staff as an independent basis for relief. *Id.*, at *5. No comparable abuse is alleged here.

The medical showing in *Morales* was also stronger: the defendant submitted expert testimony from an infectious-disease specialist detailing how her multiple comorbidities placed her at an elevated medical risk, which she claims was exacerbated by her reported exposure to black mold and asbestos. *Morales*, 2024 WL 967658, at *3-4. She also contended that her asthma inhaler was "confiscated" and that she experienced significant lapses in receiving mental health medication refills. *Id.*, at *3. Defendant alleges none of these circumstances. Accordingly, *Morales* provides no support for Defendant's position.

### 2. Risk of Serious Deterioration in Health or Death

Section 1B1.13(b)(1)(C) further requires a showing that the absence of long-term or specialized care places the defendant at risk of "serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Defendant includes a single sentence stating that "[u]nder-treated asthma can lead to 'serious deterioration in health or death,'" but he provides no evidence demonstrating that *his own*

7

1  asthma is deteriorating or "under-treated" without the medications he prefers. (Doc. 625 at 8.)

2  District courts have rejected such unsupported assertions. *See*, *e.g.*, *United States v.*
3  *Porterfield*, 2025 WL 2396511, at *7 (W.D. La. Aug. 15, 2025) (finding that defendant provided "no
4  evidence, medical or otherwise, to support that his conditions require long-term or specialized care or
5  that his medical conditions are deteriorating without that care"); *United States v. Rey-Carrillo*, 2025
6  WL 296609, at *4 (E.D. Tex. Jan. 24, 2025) ("Courts have rejected as insufficient general complaints
7  about long-term issues without medical proof of the condition or how it is deteriorating."); *Cook*, 2024
8  WL 1268163, at *3 (denying relief where defendant submitted no evidence that his health had
9  deteriorated from alleged inadequate medical treatment); *c.f. United States v. Greer*, 2025 WL 510229,
10 at *4 (E.D. Mich. Feb. 14, 2025) (finding extraordinary circumstances where defendant's chronic
11 kidney disease had progressed to end-stage renal disease requiring dialysis and time-sensitive kidney
12 transplant that he could not receive while incarcerated). Defendant's medical records are silent
13 regarding his alleged deterioration, and, as discussed, he has submitted no evidence of exacerbations
14 or other emergent events.

15 Taken together, the record shows (1) a diagnosis of asthma in April 2023, (2) the immediate
16 provision of an albuterol inhaler, (3) a scheduled follow-up, and (4) no subsequent complaints by
17 Defendant of worsening symptoms, deterioration, or denial of medically necessary treatment.
18 Defendant's arguments represent a disagreement with the course of treatment selected by BOP
19 clinicians, but disagreements based on a defendant's *preferred* plan of care do not satisfy
20 § 1B1.13(b)(1)(C).[7] Because Defendant has not established that medically necessary care is lacking or
21 that such lack of care places him at risk of serious deterioration in health or death, he has not met his
22 burden under U.S.S.G. § 1B1.13(b)(1)(C).
23 ///

---

[7] Separately, Defendant claims that the Mendota area has a high asthma prevalence and suggests—"to the extent" air quality can be linked to that statistic—that his incarceration at FCI Mendota places him at increased risk of asthma attacks. (Doc. 625 at 8.) This contention is unsupported. The phrasing itself underscores that Defendant has not established any connection between local environmental conditions and his own health. He provides no data specific to FCI Mendota, no evidence that local environmental conditions materially worsen his individual asthma, and no medical records or clinician assessments indicating that air quality at the facility has affected his symptoms or required additional treatment. Thus, Defendant has not shown that air quality at FCI Mendota places him at risk of serious deterioration in health as required by U.S.S.G. § 1B1.13(b)(1)(C).

### C. Rehabilitation and Other Considerations

Rehabilitation, while not itself an extraordinary and compelling reason for sentence reduction, may be considered in combination with other circumstances in determining whether and to what extent a reduction in a defendant's term of imprisonment is warranted. U.S.S.G. § 1B1.13(d); *see also United States v. Willis*, 663 F. Supp. 3d 1203, 1211 (D. Or. 2023) ("a [d]efendant's clean prison record and steps toward rehabilitation are only relevant to the analysis if other factors are extraordinary and compelling"). Because the Court finds no qualifying extraordinary circumstance with which rehabilitation could be paired, Defendant's commendable rehabilitative efforts cannot support relief.

Defendant also cites changes in law, particularly Amendment 821's amended "status points" provision. U.S.S.G. § 4A1.1(e) (2023). However, U.S.S.G. § 1B1.13(c) prohibits courts from considering changes in law "for purposes of determining whether an extraordinary and compelling reason exists." The court may consider changes in law when determining the *extent* to reduce a sentence previously imposed, but only after the defendant has "otherwise establishe[d] that extraordinary and compelling reasons warrant a sentence reduction." *Id.*[8] Because Defendant has not made this showing, Amendment 821 is irrelevant to the threshold inquiry.[9]

### D. 18 U.S.C. § 3553 Sentencing Factors

Having concluded that Defendant's motion is not supported by extraordinary and compelling reasons, the Court does not reach the § 3553(a) sentencing factors. *See Keller*, 2 F.4th at 1284 ("a

---

[8] U.S.S.G. § 1B1.13(c) provides in its entirety:
> ("Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.").

[9] Even if it were considered, the amendment would not affect his sentence. Part A of Amendment 821 reduced the number of "status points" assigned to certain defendants who committed their offense while under a criminal justice sentence, thereby lowering the impact on the defendant's criminal history. U.S.S.G. § 4A1.1(e) (2023); *see also* U.S.S.G. §§ 1B1.10(d), (e)(2).

When Defendant was sentenced in 2017, he was assigned two status points. (*See* PSR ¶¶ 50-52.) Under Amendment 821, he would receive no status points, which would place him in criminal history category III, rather than IV. *See* U.S.S.G. Ch. 5, Pt. A (2023). Coupled with an offense level of 39, this would result in an advisory guideline sentencing range of 324 to 405 months—well above the 240-month sentence he received through a substantial downward variance. *See id.*

district court that properly denies compassionate release need not evaluate each step" of the analysis required by § 3582(c)(1)(A)); *see also Wright*, 46 F.4th at 947 (holding that the structure of § 3582(c)(1)(A) "necessarily dictates that a court may deny compassionate release at any stage of the § 3582(c)(1)(A) pipeline").

### IV.     Conclusion

Based upon the foregoing, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Doc. 618), is **DENIED**.


IT IS SO ORDERED.

Dated:     **December 4, 2025**                              _____
                                                              UNITED STATES DISTRICT JUDGE